IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRAWNER BUILDERS, INC. | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-13-1042 |
| | : | |
| | : | |
| NORTHERN ASSURANCE COMPANY | : | |
| OF AMERICA | : | |
| | : | |

## MEMORANDUM

Plaintiff Brawner Builders, Inc. ("Brawner") filed this action against Northern Assurance Company of America ("Northern") seeking damages for breach of contract arising out of Northern's refusal to defend and indemnify Brawner in litigation brought by Dino Kalandras, a Brawner employee, for injuries he suffered in the course of his employment. (Compl., ECF No. 1.) Northern's motion for summary judgment is now pending before the court. Brawner filed an opposition that it would like the court to construe as a cross-motion for summary judgment. The parties have fully briefed the issues, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, Northern's motion will be granted and Brawner's cross-motion will be denied.

## BACKGROUND

Brawner is a construction contractor working in marine and maritime construction. (Compl. ¶ 6.) It was a named insured under Policy Number N5JH11345 ("the Policy") issued by Northern to MBP Management, Inc., a company with which Brawner is affiliated. (Brawner Resp. to Interrog., Pl.'s Opp'n Ex. 1, ECF No. 20-2, at 4-5, 12-13; Policy, Def.'s Mem. Ex. E,

ECF No. 15-8, at 23.) The Policy provided hull and machinery and protection and indemnity coverage for various vessels that Brawner uses in its business. (Policy at 1, 22.)

The Policy includes and is subject to a "Special Conditions" endorsement. (Policy at 1, 11.) At the time of Kalandras's injury, the endorsement included a "Crew" condition which stated:

> "It is a condition of this Policy that the named crew members covered under this policy is Robert Tormollan, Robert Baker, Jr., Francis Lauer, Robert W. Waldron, James F. Guess and Stephen Austin.
>
> However it is a condition of this policy that there shall not be more than two (2) crew members aboard the insured vessel at any one time.
>
> In the event additional crew is to be employed the assured shall give prior notice to this company and pay such additional premium as is required. If the assured shall fail to give such prior notice and at the time of loss in respects to crew there are more crew employed, the insurance shall respond only in the proportion that the stated number of crew bears to the number on board at the time of the accident."

(*Id.* at 11.) There appears to be no dispute that this provision was part of the Policy from the time it was first issued on February 15, 2008, through February 15, 2012. (*See* Swanson Dep., Def.'s Mem. Ex. D, ECF No. 15-7, at 105:10-16.)

On September 14, 2011, Kalandras, a Brawner employee, allegedly was injured on a covered vessel. (Compl. ¶ 12-14; Brawner Resp. to Interrog. at 5.) Brawner hired Kalandras as a safety boat captain in May 2011, and, from that time, he had been operating vessels covered by the Policy. (Brawner Resp. to Req. for Admis., Def.'s Mem. Ex. C, ECF No. 15-6, at 7-8.) Despite the fact that he had been operating vessels for four months, however, Brawner had never added Kalandras to the Policy as a crew member. (*Id.* at 8.) When Kalandras sued Brawner for his injuries, *see Kalandras v. Brawner Builders, Inc.*, Civil No. WMN-11-3642, Northern denied coverage, claiming that, because Kalandras was not listed as a crew member on the Policy,

2

indemnification and defense in the lawsuit were not available.  (Compl. ¶ 26; Def.'s Mem., ECF No. 15-1, at 9.)  Kalandras and Brawner eventually settled the suit.  (Brawner Resp. to Interrog. at 10.)

Brawner claims the Policy contemplates coverage for crew members not expressly listed in the "Crew" condition as long as there are six or fewer total crew members and two or fewer crew members on the vessel at the time of any loss.  According to Brawner, because it only employed five crew at the time of Kalandras's injury and because Kalandras was the only employee on the vessel when he was injured, the policy requires Northern to have defended and indemnified Brawner.  Northern claims that only those crew expressly listed in the Policy are covered and that, without prior notice and the opportunity to approve Kalandras's coverage as a crew member, Northern is not required under the Policy to indemnify or defend Brawner.

## ANALYSIS

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphasis added).  Whether a fact is material depends upon the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Id.*  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court must

3

view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

Maryland law[1] requires courts to apply the terms of the insurance contract itself when determining the issue of coverage. *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 625 A.2d 1021, 1031 (Md. 1993). In doing so, the court construes the instrument as a whole and accords words their ordinary meaning. *Id.*; *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (Md. 1985). "The test is what meaning a reasonably prudent layperson would attach to the term." *Pacific Indem. Co.*, 488 A.2d at 488. Where an insurance contract's language is unambiguous, the court may construe it as a matter of law based on its language alone. *Id.* at 489. Where a contract is ambiguous, the court may consider extrinsic evidence to determine its meaning. *Bausch & Lomb*, 625 A.2d at 1031. If there is no factual dispute presented by the extrinsic evidence, the court may construe an ambiguous contract as a matter of law. *Mutual Fire Ins. Co. v. Ackerman*, 872 A.2d 110, 113 (Md. App. 2005) (quoting *Nationwide Mut. Ins. Co. v. Scherr*, 647 A.2d 1297, 1300 (Md. App. 1994)). The construction given to the terms by the parties, before the dispute arose, is "an important aid to interpretation of uncertain terms." *Pacific Indem. Co.*, 488 A.2d at 489. A contract's language is ambiguous where it is "'general' and may suggest two meanings to a reasonably prudent layperson." *Id.*

---

[1] The parties do not dispute that Maryland law governs the issues in this case.

I.      **Interpreting the Policy**

The court finds that a layperson could understand the Policy to provide coverage as Northern argues—that a vessel operator[2] must be listed in the "Crew" condition in order for Northern to insure Brawner against liability for his injuries.  The Policy clearly states that coverage is "SUBJECT TO CONDITIONS OF FORM ATTACHED HERETO," and the Special Conditions endorsement, which includes the "Crew" condition, is listed as one of the endorsements to which the Policy is subject. (Policy at 8; *see also id.* at 11 (stating the endorsement is "to be attached to and made part of Policy No. N5JH11345").)  Thus, although the Policy provides protection and indemnity coverage for bodily injury to "any person," (*Id.* at 8), a reasonable layperson could interpret the language of the Policy to limit coverage for injuries to crew members to only those crew members listed in the "Crew" condition. (*Id.* (stating that the protection and indemnity coverage is "[s]ubject to all exclusions and other terms of this Policy").)

Giving the word "covered" in the "Crew" condition its ordinary meaning also supports such an interpretation. *See* "Cover" Definition, Merriam-Webster Dictionary, (defining "to cover" as "to have sufficient scope to include or take into account")[3]; "Cover" Definition, Oxford Dictionary, (defining "to cover" as to "protect against a liability, loss, or accident involving financial consequences")[4]; *accord. Pacific Indem. Co.*, 488 A.2d at 488 (noting that the Maryland Court of Appeals has consulted dictionaries to determine the ordinary and accepted meanings of contract terms).  By listing those crew members that are "covered"—i.e. protected

---

[2] Brawner does not appear to dispute that Kalandras held the same position as those employees expressly listed in the Policy under the "Crew" condition.
[3] Available at http://www.merriam-webster.com/dictionary/cover (last visited July 1, 2014).
[4] Available at http://www.oxforddictionaries.com/us/definition/american_english/cover (last visited July 1, 2014).

against liability, loss, or accident—the Policy would seem to require a conclusion that operators not listed are not included in the scope of the Policy's protection.

Brawner puts forth several arguments as to why Northern's interpretation of the Policy is precluded, but they are all unavailing. First, Brawner claims that Northern's interpretation requires the court to read the "Crew" condition in isolation, which is contrary to Maryland law requiring courts to read contracts as a whole. Brawner is correct that insurance contracts should be read as a whole. *See Pacific Indem. Co.*, 488 A.2d at 488; *see also Prince George's Cnty. v. Local Gov't Ins. Trust.*, 879 A.2d 81, 88 (Md. 2005) ("[T]he main insurance policy and an endorsement constitute a single insurance contract."). As evident from the court's discussion above, however, a reasonable layperson, considering the entire Policy, could find it does not provide coverage for Kalandras's injuries.[5] (*See, e.g.*, Policy at 8 (stating coverage is subject to the Special Conditions endorsement).) In addition, Northern's interpretation does not ignore the rest of the "Crew" condition, as Brawner claims. Nowhere in the "Crew" condition does the Policy say coverage is limited *only* by the prohibition on having more than two crew aboard a vessel at one time. (*See* Policy at 11.) Further, only providing coverage for the operators listed does not conflict with or depend on the provision limiting coverage where more than two crew members are on a vessel at once. Brawner offers no reason why the second part of the "Crew" condition would preclude a finding that only those operators listed are covered.

Second, Brawner claims that understanding the "Crew" condition to preclude coverage would render other provisions of the Policy superfluous, a result the court should avoid under

---

[5] *Sallie v. Tax Sale Investors, Inc.*, 814 A.2d 572 (Md. App. 2002), on which Brawner relies to support its position, does not preclude such a finding. The opinion explains that where a reasonable layperson could find two meanings in the language of an insurance contract, considering the standard policy forms as limited by the endorsements, the contract is ambiguous. 814 A.2d at 582. It does not require the court to reject Northern's interpretation simply because it is based primarily on the language of an endorsement.

Maryland law. *See Bausch & Lomb*, 625 A.2d at 1033. Brawner points to two types of clauses that would be rendered superfluous. First, Brawner focuses on conditions placed on the Policy which include express statements that "[i]f there is a failure to comply with this condition there is not coverage under this policy." (*See* Policy at 11.) According to Brawner, if the "Crew" condition were to exclude coverage for those crew not specifically listed, the express exclusion of coverage in the other conditions would be superfluous. The court disagrees. The language in other conditions can reasonably be read to preclude coverage entirely should the condition be violated. By contrast, that liability for a crew member's injuries may not be covered by the Policy because he is not listed under the "Crew" condition does not mean there is no coverage under the Policy at all. For example, if an entire vessel sank, the vessel itself, passengers, or other crew members expressly listed may be covered, even though an unlisted crew member's injuries are not. Language voiding coverage entirely in other conditions is not, therefore, superfluous.

Brawner also claims Northern's interpretation renders superfluous clauses in other conditions that state those conditions control notwithstanding any terms to the contrary in the Policy. (*See, e.g.*, Policy at 12 (stating that "[n]otwithstanding anything to the contrary, this policy excludes any liability imposed on the assured as punitive or exemplary damages")) According to Brawner, Northern's interpretation of the "Crew" condition is contrary to the broad indemnity provision that provides Brawner shall be indemnified for sums paid or owed as a result of "bodily injury to . . . any person." (Policy at 8.) As already discussed, however, the "Crew" condition reasonably can be read to limit the scope of the indemnity provision.[6] Thus, it

---

[6] The court notes that, to the extent Brawner is claiming Northern's interpretation fails because it conflicts with the broader indemnity provision, Maryland law holds that an endorsement conflicting with the main policy controls. *See Prince George's Cnty.*, 879 A.2d at 88.

is not that the "Crew" condition is contrary to the indemnification section of the policy; instead, it can be read to further define it.  Thus, clauses in other conditions, stating they control notwithstanding other provisions to the contrary, are not superfluous.

Finally, Brawner claims Northern's interpretation cannot stand because the "Crew" condition is an exclusion that must be read narrowly and Northern is attempting to extend it beyond the narrow construction required.  (Pl.'s Opp'n, ECF No. 2, at 30-31 (citing *Megonnell v. United Servs. Auto. Ass'n*, 796 A.2d 758, 772 (Md. 2002)).)   To the extent exclusion clauses must be read narrowly under Maryland law, Brawner fails to recognize that the "Crew" condition listing covered vessel operators is not an exclusion.  Instead, it lists who *is* covered.  If the court were to apply the narrowing principle Brawner advocates, Kalandras's injuries would be unambiguously precluded from coverage because he is not listed as a covered crew member.  To avoid this conclusion, Brawner attempts to characterize the entire condition as an exclusion based on the language prohibiting more than two crew members on a vessel at one time.  To construe the condition in that way, however, would make the list of covered crew members meaningless and essentially read it out of the Policy.  As Brawner pointed out many times in its memorandum, Maryland law requires courts to avoid such a result.  *See Bausch & Lomb*, 625 A.2d at 1033.

For all the foregoing reasons, Brawner's arguments do not dissuade the court from finding that a reasonably prudent person could interpret the Policy to provide coverage only for injuries suffered by those crew members expressly listed in the "Crew" condition.

## II.     The Extrinsic Evidence

Given that a reasonably prudent layperson could understand the Policy's language to preclude coverage for Kalandras's injuries, even if the court were to assume a reasonable person could also interpret the Policy to provide coverage, as Brawner claims, the contract is, at best, ambiguous.[7]  Thus, the court will look to the extrinsic evidence to determine whether the contract required Northern to indemnify and defend Brawner for Kalandras's injuries.[8]  *See Bausch & Lomb*, 625 A.2d at 1031 (noting that where a contract's language is ambiguous, the court can consider extrinsic evidence to clarify its meaning).  Here, the undisputed evidence clarifies the ambiguity and demonstrates that the Policy does not provide insurance coverage for Kalandras's injuries because he was not listed as a covered crew member on the Policy.

The Special Conditions endorsement, with the "Crew" condition, was included with the Policy from the time it was first issued in February 2008.  (Def.'s Mem. Ex. F, ECF No. 15-9, at 2.)  In April 2008, a Northern representative told Teresa Swanson, Brawner's insurance broker, that Northern would only insure operators who "[know] how to operate boats and [are] willing to take a boat safety course."  (Pl.'s Opp'n. Ex. 4, ECF No. 20-5, at 1.)  From the very first operator it added, Brawner complied with these requirements.  (*See, e.g.* Def.'s Mem. Ex. F at 5 (requesting to add Robert Tormollan to the Policy at the time of issuance and forwarding his

---

[7] Brawner puts forward several arguments as to why the Policy provides coverage.  For example, Brawner claims that because indemnity for bodily injury is not conditioned on the status of the person injured, as is other coverage, the Policy clearly contemplates coverage for injuries suffered by anyone on a covered vessel.  (*Compare* Policy at 8 (providing coverage for medical and hospital expenses associated with bodily injury of "any person") *with id.* (providing indemnification for "crew member burial expense" and "repatriation expenses of crew member").)

[8] At times, Brawner appears to argue that the insurance contract must be construed against Northern if the court were to find the Policy's language ambiguous.  (*See* Pl.'s Opp'n at 18, 22-24.)  Maryland does not follow the rule that an insurance policy must always be construed against the insurer.  *Bausch & Lomb*, 625 A.2d at 1031.  Instead, the contract is only construed against the insurer where it is ambiguous and there is no extrinsic evidence or the extrinsic evidence does not resolve the ambiguity.  *Cheney v. Bell Nat'l Life Ins. Co.*, 556 A.2d 1135, 1138 (Md. 1989).  Because the extrinsic evidence clarifies any ambiguity here, the court does not need to construe the contract against the insurer.

credentials); *id.* at 6 (requesting on April 9, 2008, that Andrew Ingalls be added as an "authorized operator" to the Policy and attaching a certificate as to Ingalls' qualifications[9]); *id.* at 13 (requesting on May 1, 2008, that Robert Baker, Jr., be added as a "qualified boat operator[ ]" and attaching "information to support [Brawner's] request").) In fact, after the Policy was first issued, Brawner had Northern update the "Crew" condition ten times in four years to add or remove crew members. (*See id.* at 8, 10, 12, 15-19, 23; Def.'s Mem. at 7-8.) Further, Brawner's representatives indicated an understanding that only those operators listed on the Policy were covered to operate Brawner's vessels. (*See* Def.'s Mem. Ex. F at 20 (requesting the addition of a new employee to the Policy and noting "I'd like to get him added to the Crew policy *to operate our boats*" (emphasis added)).) In addition, Swanson reaffirmed the names of the covered crew members in emails with Brawner representatives multiple times over the years of coverage. (*See, e.g.*, *id.* at 11.) Just twelve days before Kalandras was injured, she asked Brawner if it had any new operators to add and reaffirmed that "[w]ith regard to any new operators, we would need their boating experience, boating safety courses & their drivers [sic] license information. They must be approved by the carrier before they can operate the vessel." (*Id.* at 25.) There is no evidence Brawner ever attempted to add Kalandras.

As the Maryland Court of Appeals has noted, the construction given to the terms by the parties, before the dispute arose, is "an important aid to interpretation of uncertain terms." *Pacific Indem. Co.*, 488 A.2d at 489. Here, the parties' conduct over the course of the three years before Kalandras's injury clearly demonstrates that both parties understood the Policy to require vessel operators to be approved by Northern and listed on the Policy before the insurance

---

[9] Although the record does not specify to what the certificate related, Northern characterizes it as related to Ingalls' boating experience, (*see* Def.'s Mem. at 4), and Brawner does not dispute such a characterization.

covered liability arising from their employment.  Brawner offers no facts to support a different finding.  Brawner attempts to rely on a statement by a Northern representative that "[t]he most important aspect" of the policy was its insurance for only a limited number of crew on a vessel at one time.  (Pl.'s Opp'n Ex. 5, ECF No. 20-6, at 1.)  It also points to the fact that the insurance premium was calculated based on the total number of crew allowed on a vessel at one time, not on the total number of crew listed in the "Crew" condition.  (Pl.'s Opp'n at 1; *see also* Swanson Dep. at 42:13-43:9 (stating that after the Policy was first issued, there was no charge to add an additional operator as long as only one crew member was on a vessel at a time).)  Yet, Brawner fails to explain how this evidence demonstrates the Policy covered crew members not listed in the Policy.  Just because the Policy limited the number of crew allowed on a vessel at one time, and even if this was the most important limitation on coverage, it does not mean the parties intended to insure anyone that happened to be operating a vessel or that other limitations did not also apply to coverage.   The extrinsic evidence demonstrates that only those crew included in the Policy were covered, and there is no evidence from which to conclude otherwise.

## CONCLUSION

For the reasons stated above, Northern's motion for summary judgment will be granted.  A separate order follows.

|  |  |
|---|---|
|     7/9/14     <br> Date |     /s/     <br> Catherine C. Blake <br> United States District Judge |