FILED: December 15, 2015

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1787
(1:13-cv-01042-CCB)

BRAWNER BUILDERS, INC.

    Plaintiff - Appellant

v.

NORTHERN ASSURANCE COMPANY OF AMERICA

    Defendant - Appellee

JUDGMENT

    In accordance with the decision of this court, the judgment of the district court is affirmed.

    This judgment shall take effect upon issuance of this court's mandate in accordance with Fed. R. App. P. 41.

/s/ PATRICIA S. CONNOR, CLERK

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1787

BRAWNER BUILDERS, INC.,

    Plaintiff - Appellant,

  v.

NORTHERN ASSURANCE COMPANY OF AMERICA,

    Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore.  Catherine C. Blake, Chief District Judge.  (1:13-cv-01042-CCB)

Argued:  September 16, 2015    Decided:  December 15, 2015

Before MOTZ and WYNN, Circuit Judges, and DAVIS, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Stephan Young Brennan, ILIFF, MEREDITH, WILDBERGER & BRENNAN, P.C., Pasadena, Maryland, for Appellant.  Robert Lawrence Ferguson, Jr., FERGUSON, SCHETELICH & BALLEW, P.A., Baltimore, Maryland, for Appellee.  **ON BRIEF**: Ann D. Ware, FERGUSON, SCHETELICH & BALLEW, P.A., Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellee Northern Assurance Company of America ("Northern") insured Appellant Brawner Builders, Inc. ("Brawner") for personal injury claims arising aboard Brawner's insured vessels, subject to an endorsement that listed six crew members to whom the insurance policy applied. Dino Kalandras was a Brawner crew member who was not listed in that endorsement. He suffered an injury aboard an insured vessel and sued Brawner. Asserting that the insurance policy did not afford coverage for the Kalandras claim, Northern declined to provide a defense to Brawner. Brawner sued Northern for breach of contract, and the district court granted Northern's motion for summary judgment. Brawner timely appealed, and we affirm.

I.

A.

Northern, a Massachusetts insurance company, insured Brawner, a Maryland construction contracting business, for bodily injuries sustained and medical expenses incurred aboard Brawner's insured vessels (the "Policy"). The Policy provided for defense and indemnity coverage. Under the Policy, Northern insured Brawner for "[c]osts incurred . . . for investigation and defense of claims." J.A. 140. The indemnity portion of the Policy covered claims, regardless of crew member status, for:

2

> (1) Loss of life and bodily injury or illness; but excluding amounts paid under any compensation act.
>
> (2) Hospital, medical and other expenses necessarily and reasonably incurred with respect to loss of life, bodily injury to, or illness of, any person.

Id. The indemnity portion also contained crew-specific provisions, which covered:

> (3) Crew member burial expense[s] not to exceed $1,000 per person.
>
> (4) Repatriation expenses of crew member[s], excepting such as arise from the termination of any agreement in accordance with its terms, or the sale of the Vessel or other voluntary act of the Assured. . . .

Id.

The dispute in this case centers on an endorsement attached to the Policy with special conditions for navigation, passengers, and crew members. The special conditions for navigation and passengers stated the following:

> **1. Navigation**
> It is a condition of this policy that the vessel shall be confined to: Chesapeake Bay and tributaries, Susquehanna and Potomac Rivers. In no event shall the vessel be navigated beyond the limits permitted by the United States Coast Guard. If there is a failure to comply with this condition there is no coverage under this policy.
>
> **2. Passengers**
> It is a condition of this Policy that the number of passengers on board the vessel shall not exceed the number of passengers permitted by the United States Coast Guard or other governmental authority, whichever is less. If there is a failure to comply with this condition there is not coverage under this policy.

3

J.A. 143.

Of particular relevance here is the special condition regarding crew members (the "Crew Condition"), which provided as follows:

> **3. Crew**
> It is a condition of this Policy that the named crew members covered under this policy [are] Robert Tormollan, Robert Baker, Jr., Francis Lauer, Robert W. Waldron, James F. Guess and Stephen Austin.
>
> However it is a condition of this policy that there shall not be more than two (2) crew members aboard the insured vessel at any one time.
>
> In the event additional crew is to be employed the assured shall give prior notice to this company and pay such additional premium as is required. If the assured shall fail to give such prior notice and at the time of loss in respects to crew there are more crew employed, the insurance shall respond only in the proportion that the slated number of crew bears to the number on board at the time of the accident.

Id.

B.

On September 14, 2011, Kalandras was injured while removing an engine cover aboard one of Brawner's insured vessels. Kalandras was a Brawner crew member. Brawner, however, had inadvertently failed to inform Northern that Kalandras had been working on insured vessels until the day of the incident. On October 26, 2011, following an investigation, Northern denied coverage for the claim because Kalandras was not one of the named crew members under the Policy. Kalandras filed suit on

4

December 19, 2011, against Brawner in the United States District Court for the District of Maryland. Brawner defended the case, and eventually settled the claim, at its own expense.

On April 8, 2013, in the United States District Court for the District of Maryland, Brawner filed this suit against Northern, alleging two counts of breach of contract, arguing that Northern breached its duties to defend and to indemnify Brawner in the suit initiated by Kalandras. Northern filed a motion for summary judgment. The district court, construing Brawner's memorandum in opposition as a cross-motion for summary judgment, denied Brawner's cross-motion, granted Northern's motion, and entered judgment in favor of Northern. Brawner Builders, Inc. v. N. Assurance Co. of Am., No. CCB-13-1042, 2014 WL 3421535, at *6 (July 9, 2014). Looking first at the language of the Policy, the district court concluded that a reasonably prudent layperson could interpret the Policy as providing coverage only for the crew members expressly listed in the Crew Condition. Next, the district court concluded that, "even if the court were to assume a reasonable person could also interpret the Policy" to cover crew members not listed in the Crew Condition, the extrinsic evidence demonstrated that crew members were required to be listed in the Crew Condition to be covered under the Policy. Id. at *5. Brawner timely appealed.

5

II.

We review grants of summary judgment de novo. Am. Civil Liberties Union v. Mote, 423 F.3d 438, 442 (4th Cir. 2005) (citing Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 928 (4th Cir. 1995)). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)).

When reviewing cross-motions for summary judgment, the Court "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)) (internal quotation marks omitted). As the Court considers each individual motion, it must "resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." Id. (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)) (internal quotation marks omitted).

III.

This appeal requires us to interpret the Policy to determine its coverage in light of the Crew Condition. Brawner

6

argues that the Policy is ambiguous and, as a result, should be construed in favor of the insured. We disagree.

The parties agree that, in this diversity action, Maryland law is controlling. See Provident Bank of Md. v. Travelers Prop. Cas. Corp., 236 F.3d 138, 142 (4th Cir. 2000). In Maryland, before a court may find a breach of a duty to defend or indemnify, the insured must first establish that the claim is potentially covered under the insurance contract. See Aetna Cas. & Sur. Co. v. Cochran, 651 A.2d 859, 862 (Md. 1995). We construe an insurance contract by examining its terms. Pac. Indem. Co. v. Interstate Fire & Cas. Co., 488 A.2d 486, 488 (Md. 1985). To determine the parties' intent, we construe the insurance contract as a whole and afford each word its ordinary meaning. Id.

A word's ordinary meaning is determined "by what meaning a reasonably prudent layperson would attach to the term" and may be deduced by consulting dictionaries. See id. If a reasonably prudent layperson would attach only one meaning, then the contract is unambiguous, and we may construe it as a matter of law. Id. at 489. If a reasonably prudent layperson could attach more than one meaning, then the language is ambiguous, and we may consider extrinsic evidence to resolve the ambiguity. Id.

7

Here, we have no hesitation in concluding that the Policy is unambiguous because a reasonably prudent layperson would construe it to have only one meaning — that the Policy covered only the crew members listed in the Crew Condition. While the Policy covered bodily injury and medical expenses, it specified that such coverage was "[s]ubject to all exclusions and other terms of this Policy." J.A. 140. The Crew Condition was one such "term." Not only was the Crew Condition "attached to and made part of" the Policy, J.A. 143, but also, under Maryland law, "the main insurance policy and an endorsement constitute a single insurance contract, and an effort should be made to construe them harmoniously," Prince George's Cty. v. Local Gov't Ins. Trust, 879 A.2d 81, 88 (Md. 2005). The Crew Condition therefore modified the Policy's coverage for bodily injury and medical expenses.

To resolve the central issue before us, then, we examine whether the Crew Condition modified the Policy to require crew members to be named. We conclude that it did. The Crew Condition provided that the listed individuals were "the named crew members covered under this policy." J.A. 143. This language plainly established that the Policy covered only those named crew members. Merriam-Webster defines "cover" in the insurance context as "afford[ing] protection against or

8

compensation for." Cover, Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/cover (last visited Nov. 13, 2015). Similarly, Oxford defines "cover" as "protect[ing] against a liability, loss, or accident involving financial consequences." Cover, Oxford Dictionaries, http://www.oxforddictionaries.com/us/definition/american_english/cover (last visited Nov. 13, 2015).

Giving "cover" its ordinary meaning based on these definitions, we determine that the Policy protected Brawner against liability for injuries to the crew members named in the Crew Condition. It follows that a reasonably prudent layperson would construe the Crew Condition as having identified the crew members covered by the Policy and that, because Kalandras was not one of the crew members identified, the Policy did not cover liability arising from his injuries.

Brawner argues that a latent ambiguity lurks in the Policy insofar as the Crew Condition can be read alongside other provisions of the Policy containing different language. For example, a provision of the Policy provided that Northern would indemnify Brawner for the medical expenses of "any person," J.A. 140, which, arguably, could include "any member of the crew." According to Brawner, other policy language is similarly confounding: the Policy's bodily injury and medical expenses

9

provisions, for example, were not limited to crew members, whereas the provisions for burial and repatriation expenses were. In an analogous vein, moreover, the special policy conditions relating to navigation and passengers expressly stated that "there is no coverage under this policy" if Brawner failed to comply with their terms, as did a separate provision creating a general condition for seaworthiness. J.A. 143. Thus, to construe the Crew Condition to limit coverage, as a matter of law, only to the named crew members, Brawner argues, would effectively render the language in those other provisions superfluous. We find this contention wholly unpersuasive.

The mere fact that the Crew Condition contained no limiting language or explicit disclaimers found elsewhere in the Policy affords us no warrant to construct an ambiguity from their absence. Our task is to construe the language of the Crew Condition in accordance with the plain meaning evident as the parties agreed to it, not to go in search of language in other provisions of the Policy describing other coverages and other risks.

To be sure, the Policy provided for personal injury and medical expenses coverage for "any person," obviously a term more expansive than "named crew member[s]." But this difference in language does not aid Brawner because, under Maryland law, an

10

endorsement controls, rather than the main policy, where the two provisions conflict. Local Gov't Ins. Trust, 879 A.2d at 88. As the Crew Condition, set forth in an endorsement to the Policy, expressly limited coverage to "named crew members," we must read the Policy's coverage as limited in the same way. Under this reading, the Policy would still provide coverage for "any person" injured on an insured vessel, but to the extent the injured party is a crew member, the Crew Condition required the crew member to be named.

Our construction of the Policy is entirely harmonious with the language in the conditions for navigation, passengers, and seaworthiness. The language in those conditions signals that coverage would have been denied entirely if the conditions were not met. If the Crew Condition was not satisfied, however, coverage would have only been denied for any unnamed crew member. For example, a single occurrence could result in injuries to both a named crew member and an unnamed crew member. In that instance, Brawner would only be denied coverage for the unnamed crew member.

Finally, Brawner argues that the Crew Condition served mainly to cap the number of crew members allowed aboard an insured vessel. Brawner relies on language in the Crew Condition, and similar language in the crew warranty, that

11

stated that "there shall not be more than two (2) crew members aboard the insured vessel at any one time." J.A. 143, 154. If an accident occurred with more than two crew members aboard, then the Policy only covered "the proportion that the stated number of crew bears to the number on board at the time of the accident." Id. Brawner has not shown, however, how a two-crew-member limitation conflicts with the explicit requirement that the two crew members be named in the Policy.

Accordingly, we hold that the Policy unambiguously required crew members to be named in the Crew Condition for coverage to apply, and Northern is entitled to judgment as to the Kalandras claim because he was not a named crew member at the time he suffered his injury.*

IV.

For the reasons set forth, the judgment of the district court is

AFFIRMED.

---

* Having concluded that the Crew Condition is unambiguous and that Northern is entitled to judgment as a matter of law, we need not examine the district court's alternative ruling that, even if the Policy were deemed ambiguous in some relevant respect, undisputed facts based on extrinsic evidence would yield the same result.

12

FILED: December 15, 2015

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1787,   Brawner Builders, Inc. v. Northern Assurance Company
1:13-cv-01042-CCB

NOTICE OF JUDGMENT

Judgment was entered on this date in accordance with Fed. R. App. P. 36. Please be advised of the following time periods:

**PETITION FOR WRIT OF CERTIORARI:** To be timely, a petition for certiorari must be filed in the United States Supreme Court within 90 days of this court's entry of judgment. The time does not run from issuance of the mandate. If a petition for panel or en banc rehearing is timely filed, the time runs from denial of that petition. Review on writ of certiorari is not a matter of right, but of judicial discretion, and will be granted only for compelling reasons.
(www.supremecourt.gov)

**VOUCHERS FOR PAYMENT OF APPOINTED OR ASSIGNED COUNSEL:** Vouchers must be submitted within 60 days of entry of judgment or denial of rehearing, whichever is later. If counsel files a petition for certiorari, the 60-day period runs from filing the certiorari petition. (Loc. R. 46(d)). If payment is being made from CJA funds, counsel should submit the CJA 20 or CJA 30 Voucher through the CJA eVoucher system. In cases not covered by the Criminal Justice Act, counsel should submit the Assigned Counsel Voucher to the clerk's office for payment from the Attorney Admission Fund. An Assigned Counsel Voucher will be sent to counsel shortly after entry of judgment. Forms and instructions are also available from the clerk's office or from the court's web site, www.ca4.uscourts.gov, or from the clerk's office.

**BILL OF COSTS:** A party to whom costs are allowable, who desires taxation of costs, shall file a Bill of Costs within 14 calendar days of entry of judgment. (FRAP 39, Loc. R. 39(b)).

**PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC:** A petition for rehearing must be filed within 14 calendar days after entry of judgment, except that in civil cases in which the United States or its officer or agency is a party, the petition must be filed within 45 days after entry of judgment. A petition for rehearing en banc must be filed within the same time limits and in the same document as the petition for rehearing and must be clearly identified in the title. The only grounds for an extension of time to file a petition for rehearing are the death or serious illness of counsel or a family member (or of a party or family member in pro se cases) or an extraordinary circumstance wholly beyond the control of counsel or a party proceeding without counsel.

Each case number to which the petition applies must be listed on the petition to identify the cases to which the petition applies and to avoid companion cases proceeding to mandate during the pendency of a petition for rehearing in the lead case. A timely filed petition for rehearing or petition for rehearing en banc stays the mandate and tolls the running of time for filing a petition for writ of certiorari.

A petition for rehearing must contain an introduction stating that, in counsel's judgment, one or more of the following situations exist: (1) a material factual or legal matter was overlooked; (2) a change in the law occurred after submission of the case and was overlooked; (3) the opinion conflicts with a decision of the U.S. Supreme Court, this court, or another court of appeals, and the conflict was not addressed; or (4) the case involves one or more questions of exceptional importance. A petition for rehearing, with or without a petition for rehearing en banc, may not exceed 15 pages. Copies are not required unless requested by the court. (FRAP 35 & 40, Loc. R. 40(c)).

**MANDATE:** In original proceedings before this court, there is no mandate. Unless the court shortens or extends the time, in all other cases, the mandate issues 7 days after the expiration of the time for filing a petition for rehearing. A timely petition for rehearing, petition for rehearing en banc, or motion to stay the mandate will stay issuance of the mandate. If the petition or motion is denied, the mandate will issue 7 days later. A motion to stay the mandate will ordinarily be denied, unless the motion presents a substantial question or otherwise sets forth good or probable cause for a stay. (FRAP 41, Loc. R. 41).